468 P.2d 404

**Mark BOBO and Mabel P. Bobo, husband and wife, Emile C. R. Clemens and Charlotte Clemens, husband and wife, Appellants,**

v.

**JOHN W. LATTIMORE, CONTRACTOR, a corporation, Arizona Parking Lot Service, Inc., a corporation, R. W. Craven, d/b/a Craven Electric Co., Appellees.**

No. 1 CA–CIV 1192.

Court of Appeals of Arizona, Division 1, Department B.

April 22, 1970.

Rehearing Denied May 14, 1970.

Review Denied June 16, 1970.

Perry, Coulter & Head, by Allan K. Perry, Phoenix, for appellants.

T. Gale Dake, Phoenix, for appellee Craven Electric Co.

Richard S. Berry, Tempe, for appellee Arizona Parking Lot Service, Inc.

Gibbons, Kinney & Tipton, by C. Richard Potts, Phoenix, for appellee John W. Lattimore, Contractor.

EUBANK, Presiding Judge.

This appeal questions whether a perfected mechanics' and materialmen's lien, authorized by A.R.S. § 33–981,[1] can be foreclosed against real property owned by a lessor for construction of improvements made on the leased property by his lessee.

The facts are undisputed. The record shows that the appellants, hereafter referred to as lessors, were owners of three lots located at 1729–1735 East Van Buren Street in the City of Phoenix, Arizona. On January 1, 1968, they leased the three lots to Parker who fifteen days later assigned the lease to Hamburger-King Systems, Inc., #1, hereafter referred to as the lessee. Both the lease and assignment were in writing and properly executed by all necessary parties. Several months later the lessee entered into separate contracts with each of the three appellees for the construction of improvements on the vacant leased land: Arizona Parking Lot Service, Inc., contracted to surface and complete the parking area; John W. Lattimore, Contractor, Inc., contracted to build the hamburger stand; and Craven Electric Co. contracted to install the necessary electric system. The appellees each fully performed their separate obligations under the

1. "§ 33–981. Lien for labor or materials used in construction, alteration or repair of structures

A. Every person who labors or furnishes materials, machinery, fixtures or tools in the construction, alteration or repair of any building, or other structure or improvement whatever, shall have a lien thereon for the work or labor done or materials, machinery, fixtures or tools furnished, whether the work was done or articles furnished at the instance of the owner of the building, structure or improvement, or his agent.

B. Every contractor, sub-contractor, architect, builder or other person having charge or control of the construction, alteration or repair, either wholly or in part, of any building, structure or improvement, is the agent of the owner for the purposes of this article, and the owner shall be liable for the reasonable value of labor or materials furnished to his agent."

three contracts. Thereafter lessee default-ed on its obligation to pay the appellees and each appellee timely perfected a mechanics' and materialmen's lien against the then im-proved leased real property. (A.R.S. § 33–993). Lessee also failed to pay the les-sors their rent when it became due and the lessors filed this quiet-title action joining the lessee, Parker, and the three appellees as defendants. Appellees answered and counterclaimed separately, pleading their respective liens and praying for the fore-closure of their liens against the lessors' real property interest. Defaults were en-tered against the lessee and Parker. All parties to the action moved for summary judgment and the trial court granted judg-ment to each of the appellees, while deny-ing it to the lessors. Lessors appeal from the entry of that summary judgment.

The lessors and appellees agree that the rule of law in Arizona is that ordinarily a lien for materials and/or labor contracted by a lessee and used on the leased premises is not good against the interest of the les-sor. Mulcahy Lumber Co. v. Ohland, 44 Ariz. 301, 36 P.2d 579 (1934). They also agree that the exception to the rule applies where the evidence establishes that the les-see acted as an agent, created by statute, of the lessor in ordering the labor and/or materials, Mulcahy, supra; A.R.S. § 33–981. Both agree that DeVry Brick Co. v. Mord-ka, 96 Ariz. 70, 391 P.2d 925 (1964) is dis-positive of this issue on appeal. Lessors quote from the last paragraph of the opin-ion where the Supreme Court, referring to a written lease, said, "The lessees were not only obligated [under the lease] to improve the lessors' property, but these improve-ments had to be undertaken in accordance with plans and specifications approved by the lessors. Consequently, the lessees be-came the agents of the lessors pursuant to the statute." 96 Ariz. at p. 72, 391 P.2d at p. 926. This, the lessors contend, requires that at least a dual obligation be imposed upon the lessee by the lease: first, that les-see be required to improve the lessors' prop-erty and, second, that lessee's plans and specifications for the improvement be sub-ject to approval by lessors. Appellees, on the other hand, contend that the statutory agency relationship is created merely by the lease requirement that the lessee make improvements upon the leased property. 96 Ariz. at p. 72, 391 P.2d 925.

The lease provision involved herein reads as follows:

> "*Construction of Building*
>
> Lessee agrees to construct a building of approximately 800 square feet on the leased premises at Lessee's cost and ex-pense, and to complete the same within one hundred fifty days from the execu-tion of this lease.
>
> It is understood and agreed that Lessee shall not encumber the real property in any manner."

The lease also provides that upon the ex-piration of the lease that peaceable posses-sion and all real improvement will be de-livered to the lessors.

In the DeVry case the lease required the lessee to remodel and improve the build-ing on the leased premises in accordance with plans and specifications to be ap-proved by both lessors and lessees. The Su-preme Court held that these requirements created a statutory agency relation between the lessors and lessees for the purpose of the lien law. In reaching this conclusion the court cited Oregon Lumber & Fuel Co. v. Nolan, 75 Or. 69, 143 P. 935 (1914), wherein the lessee was obligated under the terms of the lease to construct a substan-tial rooming, boarding or apartment house building on the leased premises at a cost of not less than $6,000, to be completed with-in four months from the lease date. The Oregon Supreme Court held that, " * * * if the owner of the fee contracts with his tenant or would-be purchaser, compelling the latter to erect a building, an agency is created as against the owner of the fee by force of the statute, with the result that one who furnishes material or labor at the in-stance of the agent is entitled to a lien on the fee for the labor or materials furnish-ed." See also Lorenz v. Pilsener Brewing

Co. of Oregon, 159 Or. 552, 81 P.2d 104 (1938); Gabriel Powder & Supply Co. v. Thompson, 163 Or. 623, 97 P.2d 182 (1939); 79 A.L.R. 965, Section IV(a); 163 A.L.R. 992. Our Supreme Court also cited Ott Hardware Co. v. Yost, 69 Cal.App.2d 593, 159 P.2d 663 (1945), as authority for its DeVry decision. The Ott case cites an earlier California Supreme Court case, English v. Olympic Auditorium, Inc., 217 Cal. 631, 20 P.2d 946, 87 A.L.R. 1281 (1933), for the proposition that in California the test for determining a statutory agent is whether or not the provision requiring improvement of the leased real property is optional or not. If it is an optional condition, no agency is created for lien purposes; however, if the lessee is required to make the improvements in order to avoid a breach of the lease, then he is a statutory agent. These two cases, which ground the Arizona Supreme Court's opinion in DeVry, favor appellees' argument. In a more recent case, Hayward Lumber & Investment Co. v. Graham, 104 Ariz. 103, 107, 449 P.2d 31 (1968), the Supreme Court though not citing Nolan, English or DeVry, restated the principles established in those cases. See also Mills v. Union Title Co., 101 Ariz. 297, 300, 419 P.2d 81 (1966); 57 C.J.S. Mechanics' Liens § 65, p. 562.

■ We agree with the appellees' contention and it is our opinion that a statutory agency is created by A.R.S. § 33–981 when a lessee is required by his lease to make substantial improvements on the leased property. The language in DeVry relating to the approval of plans and specifications by lessors is dealing with the particular facts of that case and does not impose additional requirements beyond the above-stated requirement.

■ Turning now to the lease provision set out above, it is clear from reading it together with the entire lease that lessee's failure to construct an approximately 800-square-foot-building on the leased property within one hundred and fifty days following the execution date of the lease would constitute a breach of the lease and compliance therewith is not optional with the lessee. The condition not being optional with the lessee it is our opinion that statutory agency was created between the lessors and lessee for the purpose of perfecting mechanic and material men liens against the real property interests of the lessors.

Lessors' final contention is that the summary judgment should be reversed because by filing their Rule 56(f) [2] affidavits the trial court was *barred* from granting appellees' motions for summary judgment. Their affidavits were filed in response to a court order granting them one week within which to file affidavits controverting those filed by the appellees.[3] Each affidavit filed by the lessors attested to substantially the same difficulty in obtaining evidence: that the lessors could not supply facts to justify their opposition to the appellees' affidavits because, " * * * it is essential to know what and how much material was furnished.", and that until such time as the lessors were in possession of the information concerning quantities and kind of material furnished under the separate contracts, that they were unable to estimate the labor required and claimed for each contracted job. The affidavits contained no statement concerning the method, plan or discovery device that the lessors intended to use in order to satisfy the alleged evidentiary deficiency of their case, nor did they estimate the time required by lessors to collect the evidence. See 6 Moore's Federal

2. Rule 56(f), Rules of Civil Procedure, 16 A.R.S.
"56(f) When affidavits are unavailable. Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may

order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

3. Appellees' affidavits set forth specifically the value of the materials and labor that they individually applied to the leased real property.

Practice, par. 56.24, p. 2875. The record does not reflect any request by lessors for additional time in which to ascertain the true facts and during oral argument their counsel confirmed that no such request was made.

■ It is our opinion that the contents of lessors' affidavits are insufficient to bar the entry of summary judgment. Rule 56 (f) places the burden upon the lessors to assert by affidavit their *reasons* why they cannot file opposing or controverting affidavits. The reasons necessarily must be specific reasons rather than general ones, as were those of lessors, in order for the trial court to properly exercise its discretion in either granting or denying continuance or postponement of its decision on the motion for summary judgment, pending before it, until such time as the evidence is obtained and the original affidavit controverted or not. The purpose of a Rule 56 (f) affidavit is to avoid a confrontation with the moving parties' motion for summary judgment until such time as each party has had an opportunity to ascertain the true facts. In order to insure this purpose, the trial court must be advised by affidavit of the particular evidence which is beyond the control of the affiant; where it is; what he believes it will be; the methods whereby the affiant intends to obtain it; and the estimated time required to acquire it. In this respect the affidavit is very similar to the affidavit required to be filed with a motion for a continuance or postponement under Rule 42, Rules of Civil Procedure, 16 A.R.S. where a demonstration of "sufficient cause" is required, together with the allegation of specific reasons justifying the motion. (See Rule 42 (d)). A Rule 56(f) affidavit, like a Rule 42 motion, is addressed to the sound discretion of the trial court. 35B C.J.S. Federal Civil Procedure § 884, p. 205; 6 Moore's Federal Practice, § 56.24, p. 2873.

■ Lessors' contention that a Rule 56 (f) affidavit "bars" the trial court from further action on a motion for summary judgment pending before it is without merit. Rule 56 is designed as a means for providing a fast, economical disposition of actions where it is demonstrated to the trial court that there is no genuine issue as to any material fact and where the moving party, or some other party, is entitled to judgment as a matter of law. The clear intention of the rule is not to "bar" the exercise of the trial court's discretion but to assist the court in the exercise of it by providing the court with specific reasons that require a continuance. The trial court did not abuse its discretion regarding lessors' affidavits. The lessors do not question the sufficiency of appellees' affidavits. We have reviewed them and find them sufficient.

Judgment affirmed.

HAIRE and JACOBSON, JJ., concur.