569 P.2d 240

**A. Glynn ROSS, Appellant,**

v.

**R. G. DUKE, Appellee.**

**No. 1 CA–CIV 2952.**

Court of Appeals of Arizona,
Division 1,
Department A.

Dec. 7, 1976.

Rehearing Denied Jan. 4, 1977.

Review Denied Jan. 25, 1977.

Cavness & DeRose by Jack C. Cavness, Phoenix, for appellant.

Harrison, Myers & Singer, P.C. by Mark I. Harrison, Phoenix and Kenneth P. Clancy, Phoenix, for appellee.

## OPINION

OGG, Judge.

We are here dealing with a defamation action that arose in the setting of a contested union election. The appellant/plaintiff A. Glynn Ross filed an action claiming the appellee/defendant R. G. Duke libeled Ross by publishing certain audit reports. These reports were critical of the manner in which Ross, as secretary and treasurer of Local 640 of the International Brotherhood of Electrical Workers, managed the business affairs of the union. The audit reports were prepared by certified public accountants William G. Farrow and R. Dale Hershey, doing business as Gallant, Farrow & Co., P.C.

Ross filed suit against the accountants and Duke. The trial court granted a directed verdict to the accountants who prepared the audit. That judgment was affirmed by this court in the case of *Ross v. Gallant, Farrow & Co., P.C.*, 27 Ariz.App. 89, 551 P.2d 79 (1976). In that case this court found the accountants could assert a qualified privilege as to the contents of their audit report and that Ross had failed to show there was any malice in these reports or that the reports had been released in reckless disregard of the truth or falsity of the contents of the reports.

The action against Duke was tried before a jury and ended in a verdict for Ross in his defamation claim against Duke. The trial court set aside the jury verdict and granted judgment N.O.V. in favor of Duke. It is from this order and judgment N.O.V. that Ross now brings this appeal.

The pivotal issues raised in this appeal are as follows:

1. Is the subject matter of the Ross defamation claim pre-empted by federal law?

2. Was Duke protected by an absolute or conditional privilege in his release of the allegedly defamatory audit reports?

A brief statement of the facts is necessary to put this case in proper perspective. In March, 1972, three members of the Local Union # 640 International Brotherhood of Electrical Workers, AFL–CIO, filed charges with Duke, the union's international vice-president, alleging that plaintiff Ross, in his position as financial secretary-business manager of Local # 640, had made improper expenditures of union funds. In May, 1972, three men bringing the charges ran against Ross and his slate of officers in a union election in an attempt to replace Ross as the financial secretary-business manager of Local # 640. The ballots were counted in June and Ross and his slate of officers were re-elected. Ross contends that the complaints and the subsequent investigation were instituted in an attempt to defeat his bid for re-election.

Pursuant to his duties as international vice-president of IBEW Duke investigated the charges, conducted an audit by the accounting firm of Gallant, Farrow & Co., and appointed a hearing officer to conduct hearings on the charges. Following a review of the union's by-laws and constitution and an examination of the financial records the accounting firm sent reports to Duke that questioned certain expenditures from union funds made by Ross. It was the opinion of the accountants that specific expenditures had been made that were not properly authorized or documented in the minutes of the local union.

Upon receiving these audit reports Duke examined them and then sent copies to Ross and the other charged parties, as well as sending copies to the three charging parties and to a hearing officer Duke appointed to investigate the charges. Ross contends that Duke maliciously mailed copies of

these reports to the Ross opponents on May 2, 1972, just one month prior to the election.

All three CPAs who testified at the trial agreed that Duke was fully justified in relying on the truthfulness of the allegedly libelous audit reports.

To prove malice in the case Ross relied upon the fact that over a period of years Duke and Ross had disagreed on many union matters and that there was not a friendly relationship between the two men. Since Ross claimed that Duke was biased, another hearing officer was appointed to conduct the hearing. This hearing officer concluded that Ross was innocent of any wrongdoing and made a report to Duke. Duke reviewed the recommendation of the hearing officer, consulted with counsel and then dismissed all charges against Ross in August, 1972.

### IS DEFAMATION CLAIM PRE–EMPT-ED BY FEDERAL LAW

In granting defendant Duke's motion for judgment N.O.V: the trial court listed several reasons in support of such judgment. Among the pertinent reasons listed were the court's finding that federal laws have pre-empted any relief by state courts in defamation actions of this kind.

The courts and Congress recognize that the entire field of labor relations requires special legislation and treatment. The task of regulating union activities was entrusted to the National Labor Relations Board. In 1959 Congress enacted the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 401, et seq. That statute (LMRDA), placed the federal government in the field of regulating the internal affairs of unions, including the manner in which they conduct union elections. In the case of *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), the United States Supreme Court held that states may not regulate activities that are arguably subject to the National Labor Relations Act except where violence or coercive conduct is involved. See *Garner v. Teamsters Local 776*, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228

(1953). The *Garmon* doctrine was followed by the Arizona Supreme Court in *Oss v. Birmingham*, 97 Ariz. 242, 399 P.2d 655 (1965), in a defamation action brought by a contractor against officers of a union local. The Arizona Supreme Court held that the alleged defamation was arguably an unfair labor practice and was therefore within the exclusive jurisdiction of the National Labor Relations Board and that the issues had been preempted from consideration by the state courts.

The United States Supreme Court modified the *Garmon* decision as applied to defamation actions in *Linn v. Plant Guard Workers Local 114*, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966). In *Linn* the Court held that a state court can hear libel cases in labor matters "[P]rovided it is limited to redressing libel issued with knowledge of its falsity, or with reckless disregard of whether it was true or false." Id. at 61, 86 S.Ct. at 662, 15 L.Ed.2d at 589. The *Linn* decision reasoned that a state's concern with redressing malicious libel is so deeply rooted in local feeling and responsibility that it should be treated as an exception to NLRB's exclusive jurisdiction.

In *Old Dominion Branch No. 496 National Association of Letter Carriers v. Austin*, 418 U.S. 264, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974), the Court followed *Linn* and definitively limited *Garmon* by holding "[t]hat libel actions under state law were pre-empted by the federal labor laws to the extent that the State sought to make actionable defamatory statements in labor disputes which were published without knowledge of their falsity or reckless disregard for the truth." Id. at 273, 94 S.Ct. at 2775, 41 L.Ed.2d at 755.

■ We therefore conclude that the states are not now pre-empted from hearing defamation actions such as we have here, provided that the state limits recovery to those cases where the defamer knew the matters published were false or he proceeded to publish the libelous matter in reckless disregard of whether it was true or false.

Since we find the state courts have jurisdiction in this case we now proceed to determine if Duke had an absolute privilege or a conditional privilege to publish the alleged libelous audit reports.

### *WERE THE AUDIT REPORTS PRIVILEGED?*

In *Linn* and in *Old Dominion* the Supreme Court indicated that in labor matters, just as in matters dealing with public figures and public issues, the Court would use the defamation test of *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). See *Ross v. Gallant, Farrow & Co., P.C.*, 27 Ariz.App. 89, 551 P.2d 79 (1976); *Phoenix Newspapers, Inc. v. Church*, 24 Ariz.App. 287, 537 P.2d 1345 (1975).

Under the doctrine of *New York Times*, as followed in *Linn* and *Old Dominion*, Duke can only be held for defamation damages if the evidence supports a finding that he knew the audit reports were false or that he acted in reckless disregard as to whether the reports were true or false.

■ An absolute privilege against a defamation charge arises in the context of judicial proceedings, legislative proceedings and administrative or executive functions of the government. 50 Am.Jr.2d *Libel and Slander* § 194 (1970); 1 *Harper & James, The Law of Torts* § 5.21 (1956). In our opinion there is no absolute privilege protecting Duke under the facts of this case. See *Pulliam v. Bond*, 406 S.W.2d 635 (Mo. 1966).

We do, however, find that the distribution of the audit reports by Duke in this labor election dispute was conditionally privileged and a defamation cause of action can only be made against him in the Arizona state courts if the plaintiff Ross can prove that Duke knew the audit reports were false or if Duke published the reports with reckless disregard as to whether the reports were true or false. *Linn v. Plant Guard Workers Local 114, supra.*

■ This court, in reviewing the granting of a motion for judgment N.O.V. must view the evidence in a light most favorable to sustaining the jury's verdict. *In re Estate of Frick*, 13 Ariz.App. 247, 475 P.2d 732 (1970); *In re Thompson's Estate*, 1 Ariz. App. 18, 398 P.2d 926 (1965).

■ In reviewing the evidence in this light we can find no competent evidence that Duke abused his conditional privilege. We agree with the finding of the trial court that was made when it granted the motion for judgment N.O.V. The trial court stated:

[T]he defendant Duke, in his capacity as International Vice President received a formal complaint of the plaintiff's misfeasance and malfeasance in performing his duties as local union officer, which grievances suggested financial improprieties. Defendant Duke caused a disinterested professional audit to be performed. The written audit report substantiated the complaints. The evidence at the trial showed he relied on those as being valid and accurate and published them. *There was no evidence that he knew the report . . . was in error.* [Emphasis added]

The principles enunciated in *New York Times, Linn* and *Old Dominion* apply to this appeal which arises in a labor-related context involving allegedly libelous statements made about Ross during his campaign for election to union office. The attempt by Ross to show Duke's malice by showing the ill will and past disputes between the two men standing alone simply does not comply with the requirements of the *New York Times* test. In *Old Dominion* the Court said:

Instructions which permit a jury to impose liability on the basis of the defendant's hatred, spite, ill will, or desire to injure are 'clearly impermissible.' [Citations omitted]. '[I]ll will toward the plaintiff, or bad motives, are not elements of the New York Times standard.' [Citations omitted]. 418 U.S. at 281, 94 S.Ct. at 2780, 41 L.Ed.2d at 760.

■ It is clear that the Supreme Court has ruled that a plaintiff cannot prevail in a defamation suit arising in a labor relations

context absent a showing of actual knowledge of the falsity of the documents circulated or that there was a publication in reckless disregard of the truth or falsity of the documents circulated. Thus, the common law definition of malice normally utilized in this state has no application in a defamation case arising in a labor relations context. *Old Dominion Branch No. 496, National Association of Letter Carriers v. Austin, supra.*

A review of the transcript in this case shows the plaintiff Ross failed in his burden of proof to show that the defendant Duke had actual knowledge of the falsity of the three audit reports and there is no reasonable evidence to support a finding that he published the reports in reckless disregard as to their truth or falsity.

Affirmed.

DONOFRIO, P. J., and NELSON, J., concur.