873 P.2d 668

**Bradford W. LEWIS, Plaintiff–Appellant,**

**v.**

**Robert J. OLIVER and Westcor Aviation Inc., an Arizona corporation, Defendants–Appellees.**

**No. 1 CA–CV 91–0336.**

Court of Appeals of Arizona, Division 1, Department B.

Oct. 14, 1993.

Reconsideration Denied Feb. 2, 1994.

Review Denied May 17, 1994.*

* Martone, J., of the Supreme Court, voted to grant the petition for review on issue B.

Rake Downey McGovern Shorall & Cohen, P.C. by M.E. Rake, Jr., Thomas J. Shorall, Jr., Sharon E. Ravenscroft (fka Reuss), Phoenix, for plaintiff-appellant.

Murphy & Posner by Daryl M. Williams, Phoenix, for defendants-appellees.

## OPINION

GRANT, Presiding Judge.

In this appeal we hold that a complaint made to superiors of a safety inspector of the

Federal Aviation Administration ("FAA") is entitled to a qualified, but not an absolute privilege. We also hold that an FAA safety inspector is a public official who must establish a defendant's actual malice in making defamatory statements concerning the performance of the inspector's job. Because the plaintiff presented evidence sufficient to create a jury question on whether the defendant acted with actual malice, we reverse the grant of summary judgment for the defendant and remand to the trial court for further proceedings.

## FACTS AND PROCEDURAL HISTORY

The appellant, Bradford Lewis ("Lewis"), appeals from summary judgment in favor of the appellees, Westcor Aviation, Inc. ("Westcor"), and its president and chief executive officer, Robert J. Oliver ("Oliver"). Because this is an appeal from summary judgment, we view the facts in the light most favorable to the appellant. *Gordinier v. Aetna Casualty & Sur. Co.*, 154 Ariz. 266, 267, 742 P.2d 277, 278 (1987).

Lewis is an aviation safety inspector with the Federal Aviation Administration. In his inspection of air transportation providers, if he finds violations of FAA safety regulations during his inspections, he recommends action to his superiors. He has no discretion to impose sanctions himself against the air transportation carriers he inspects for safety violations. He merely reports his findings to superiors, who are responsible for determining any course of action.

In July of 1986, Lewis was assigned by his supervisors to lead a team of inspectors conducting an in-depth inspection of Westcor. Lewis reported numerous violations of safety regulations and recommended that Westcor be sanctioned. His superiors agreed. As a result of the inspection, the FAA sought to revoke both Westcor's air carrier certificate and Oliver's pilot certificate.

An administrative hearing before the National Transportation Safety Board was held at which Lewis testified against Oliver and Westcor. The administrative law judge found that Oliver and Westcor were responsible for falsifying records and ordered revocation of Westcor's air carrier certificate. The

FAA later settled the affair with Westcor and Oliver and agreed to drop the revocation charges.

On July 18, 1988 Oliver called a "Hotline" established by the Inspector General's Office of the Department of Transportation. He complained about Lewis and the propriety of the inspection and enforcement action. The Inspector General's office assigned Special Agent Robert Guthmiller ("Guthmiller") to investigate Oliver's complaint.

Guthmiller prepared a report of his investigation, which he submitted to Lorence Bessette ("Bessette"), Lewis's superior. Bessette reviewed the report and prepared an analysis in which he concluded that Lewis had committed no misconduct and should be exonerated of all of Oliver's charges. Bessette concluded essentially that Oliver's accusations twisted Lewis's testimony.

On September 14, 1989, Oliver met with Bessette to discuss the latter's analysis. Present at the meeting, in addition to Oliver and Bessette, were David Welsh of Westcor, and Oscar Culp and Leonard Levandowski of the FAA. Oliver accused Lewis of perjury and abuse of authority at this meeting. Bessette took notes and produced a record of the meeting in which he wrote:

> He [Oliver] made it very clear that he was out to get Lewis and stated, "I will continue to use the system to the fullest and will not back off until I get Lewis."

> I asked him why he was picking on the lowest man in the organization structure as Lewis did not have the power that he was assigning to him. I explained to him that an inspector can only report what he sees and that the responsibility for taking enforcement action was coordinated through his unit supervisor, office manager, Division staff, and ultimately Western Pacific Regional Counsel (AWP–7) before any decision to take legal action is made. He answered that with an analogy that Lewis was like a traffic cop hiding in the bushes and catches him speeding. I asked him that if he was speeding and he was caught why would he go after the cop if he was guilty. He responded, "because he was laying for me and that was what Lewis was

doing, laying for me." Many times during this meeting he would regress to his Marine experience and colloquially express his feelings to describe his intentions. In this case he stated, "Lewis was on his six, and now, it's his turn I'm on his." He stated that he planned to sue Lewis if he could "draw him out from under the federal cloak of protection."

Oliver also caused others to file complaints against Lewis. Lewis asserts that he was exonerated by the internal investigation but Oliver's accusations damaged his reputation and harmed his chances for promotion at the FAA.

Lewis filed his complaint on January 17, 1990, alleging defamation, intentional infliction of emotional distress, intentional interference with business relationship and conspiracy. Oliver filed a motion for summary judgment, arguing: the claims were barred by the statute of limitations; his statements were absolutely privileged; and if the statements were only conditionally privileged, the privilege was not abused. The trial court granted the motion holding: (a) the statements were absolutely privileged; and (b) even if they were only conditionally privileged, Lewis had failed to demonstrate sufficient evidence of actual malice to justify a trial. The court denied Lewis's motion for new trial and entered final judgment on April 8, 1991 and Lewis filed a timely notice of appeal. We have jurisdiction pursuant to Ariz.Rev.Stat.Ann. ("A.R.S.") sections 12–2101(B) and (F)(1).

## ISSUES

1. Are Oliver's statements protected by absolute or conditional privilege?

2. Is Lewis a public official?

3. Has Lewis presented enough evidence of actual malice to create a jury question?

4. Did the trial court err in denying Lewis's motion under Rule 56(f), Arizona Rules of Civil Procedure, for more time to respond to the motion for summary judgment?

5. Did Lewis have the legal and factual basis to present the claims of intentional infliction of emotional distress, interfer-

ence with business relationships and conspiracy to the jury?

6. Is Lewis's complaint for defamation barred by the Statute of Limitations?

## DISCUSSION

## I. ABSOLUTE OR CONDITIONAL PRIVILEGE

We first consider the privilege issue. Oliver argues his statements were absolutely privileged, while Lewis argues that only a conditional privilege applies.

There are two classes of privileges, "absolute" and "qualified." The absolute privileges created by law are based upon the recognition that certain persons, because of their special position or status, should be as free as possible from fear that their actions in that position might have an adverse effect upon their own personal interest. Restatement (Second) of Torts, Chapter 25, Topic 2, Title B, "Absolute Privilege Irrespective of Consent," pp. 242–43. Qualified privileges are limited to particular occasions requiring the exchange of information reasonably thought to be true. *Id.*

*Green Acres Trust v. London,* 141 Ariz. 609, 612–13, 688 P.2d 617, 620–21 (1984). Whether a privilege arose is a question of law for the court. *Id.* at 613, 688 P.2d at 621. A question of law is reviewed *de novo* by this court. *Employer's Mut. Cas. Co. v. McKeon,* 170 Ariz. 75, 821 P.2d 766 (App.1991).

The difference between the absolute and qualified privileges is significant. As to absolute privilege, "[t]he defense is absolute in that the speaker's motive, purpose or reasonableness in uttering a false statement do not affect the defense." *Green Acres Trust,* 141 Ariz. at 613, 688 P.2d at 621. The conditional privilege, on the other hand, does not provide an absolute defense:

It differs from the defense of absolute privilege in that "the interest which the defendant is seeking to vindicate is regarded as having an intermediate degree of importance, so that the immunity conferred is not absolute, but is conditioned upon publication in a reasonable manner and for a proper purpose." [William L.

Prosser, *Law of Torts*, § 115, at 786 (4th ed. 1971)]. Absent a proper purpose or reasonable manner of publication, the defense fails. The privilege "give[s] protection from liability only when exercised for the purpose for which [it] is given and with reasonable care that no more harm shall be done to the interests of others than is necessary to accomplish the end for which the privilege is given." Restatement (Second) of Torts, Chap. 25, Topic 3, Title A, "Occasions Making a Publication Conditionally Privileged," p. 258.

*Id.* at 616, 688 P.2d at 624. The test to determine whether a conditional privilege applies is to decide whether the circumstances in which the communication was made created an obligation to speak. *Id.* at 616, 688 P.2d at 624; *Miller v. Servicemaster by Rees,* 174 Ariz. 518, 520, 851 P.2d 143, 145 (App. 1992).

■ Oliver asserts that his statements fall under the judicial privilege. He analogizes his hotline complaint to a complaint being filed or an informant giving information to a government investigative body that launches an official investigation. In support, he cites: *Bailey v. Superior Ct.,* 130 Ariz. 366, 636 P.2d 144 (App.1981) (complaint made to quasi-judicial body [judicial commission established to inquire into conduct of judges] absolutely privileged); *Drummond v. Stahl,* 127 Ariz. 122, 618 P.2d 616 (App.1980), *cert. denied,* 450 U.S. 967, 101 S.Ct. 1484, 67 L.Ed.2d 616 (1981) (complaint made to quasi-judicial body [State Bar of Arizona] about lawyer's unethical conduct was absolutely privileged); *Smith v. McDonald,* 895 F.2d 147, 149 (4th Cir.1990), *cert. denied,* 498 U.S. 814, 111 S.Ct. 53, 112 L.Ed.2d 29 (1990) ("[C]ommunications made in the course of an administrative proceeding are absolutely privileged if the administrative officer or agency is exercising a judicial or quasi-judicial function."); *Angel v. Ward,* 43 N.C.App. 288, 258 S.E.2d 788 (1979) (certified public accountant's call to IRS to complain about an

agent's competence, and affidavit provided at IRS request absolutely privileged as "quasi-judicial").

The trial court agreed the statements were absolutely privileged, finding support in *Bailey v. Superior Ct.,* 130 Ariz. 366, 636 P.2d 144. In *Bailey,* an attorney's complaint filed with Commission on Judicial Qualifications contained defamatory material about the plaintiff and she sued. When the superior court denied the attorney's motion for summary judgment, Division Two of this court granted special action relief. The court noted the absolute privilege that protects statements made in the course of judicial and legislative proceedings. It held that the judicial privilege applied to a complaint to the judicial commission, "if the defamatory statements have *some relation* to the judicial proceedings, even though they may not constitute evidence relevant and material from a strictly legal evidentiary viewpoint." 130 Ariz. at 368, 636 P.2d at 146 (emphasis in original).

We find *Bailey* and the other foregoing cases distinguishable or inapposite. They are based on the absolute privilege that inheres in judicial or "quasi-judicial" proceedings.[1] This court has previously held that the absolute privilege does not apply in administrative proceedings. *Melton v. Slonsky,* 19 Ariz.App. 65, 504 P.2d 1288 (1973). In *Melton,* the defendant appeared at a meeting of the State Liquor Board and made unsworn statements that the plaintiff had used bribery to obtain a liquor license. We held the statements conditionally privileged but shunned the "quasi-judicial" analysis:

> In our opinion, both policies can best be served not by granting or denying an absolute privilege based upon the mere determination of whether a particular administrative board possesses "quasi-judicial" powers, but by extending a qualified or defeasible privilege to statements made before such boards. Such a qualified privi-

---

1. *Smith v. McDonald* and *Angel v. Ward* are grounded in the law of North Carolina, which grants an absolute privilege in administrative proceedings: "[C]ommunications made in the course of an administrative proceeding are absolutely privileged if the administrative officer or agency is exercising a judicial or quasi-judicial function." *Smith v. McDonald,* 895 F.2d at 149, citing *Mazzucco v. North Carolina Bd. of Medical Examiners,* 31 N.C.App. 47, 228 S.E.2d 529, 532 (N.C.App.1976).

lege was recognized at common law as the "public interest" privilege and "involves communications made to those who may be expected to take official action of some kind for the protection of some interest of the public."

19 Ariz.App. at 68, 504 P.2d at 1291 (quoting Prosser, *supra,* § 115 at 791); *see also Miller v. Servicemaster by Rees,* 174 Ariz. at 520, 851 P.2d at 145 (conditional privilege for employees to report perceived acts of sexual harassment). In *Ross v. Duke,* 116 Ariz. 298, 301, 569 P.2d 240, 243 (App.1976), we stated that "[a]n absolute privilege against a defamation charge arises in the context of judicial proceedings, legislative proceedings and administrative or *executive functions* of the government." While this statement seems to conflict with *Melton v. Slonsky,* it is clearly dictum.

The court in *Melton v. Slonsky* appears to have applied the following privilege stated in the Restatement:

Communication to One Who May Act in the Public Interest

An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that

(a) there is information that affects a sufficiently important public interest, and

(b) the public interest requires the communication of the defamatory matter to a public officer or a private citizen who is authorized or privileged to take action if the defamatory matter is true.

Restatement (Second) of Torts § 598 (1977). This privilege applies to protect the public's interest "in the honorable discharge of their duties by public officers...." *Id.* at § 598 comment d. The Restatement comments show this privilege applies to the situation now before us:

e. *Communications to public officials.* The rule stated in this Section is applicable to defamatory communications to public officials concerning matters that affect the discharge of their duties. The duties of a public officer include supervision of inferior officers, and this supervision in many cases carries with it the power to remove or discipline the inferiors for neglect of

duty or malfeasance in office, or to report the misconduct to heads of departments or other persons having the power of removal or discipline. In performing this duty of supervision, it is desirable that public officers have extensive information concerning the conduct of their subordinates, in order that they may intelligently exercise their discretion. Therefore, a defamatory publication made by a citizen to a public officer concerning the work of a subordinate under his control or supervision is conditionally privileged....

*Id.* at § 598 comment e. Section 598 is consistent with this court's holdings in *Melton v. Slonsky* and *Miller v. Servicemaster by Rees.* Together they demonstrate that the appellee's statements were conditionally privileged. A similar case is *Bradley v. Computer Sciences Corp.,* where the Fourth Circuit granted a conditional privilege to a defense contractor's complaint against a civil servant because "presenting complaints to responsible government officials about the conduct of their subordinates with whom the complainer has had official dealings is analogously central to the protections of the right to petition" granted under the First Amendment to the United States Constitution. 643 F.2d 1029, 1033 (4th Cir.1981) (quoting *Stern v. United States Gypsum, Inc.,* 547 F.2d 1329, 1342–43 (7th Cir.), *cert. denied,* 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977)).

We hold that Oliver's statements were not absolutely but conditionally privileged. If Oliver abused the conditional privilege, Lewis may still recover. A plaintiff may establish abuse of a conditional privilege by showing either (1) actual malice, *i.e.,* with knowledge of its falseness or with reckless disregard of whether it was true or not; or (2) excessive publication, *i.e.,* publication to an unprivileged recipient not reasonably necessary to protect the interest upon which the privilege is grounded. *Green Acres Trust,* 141 Ariz. at 616, 688 P.2d at 624; *Melton v. Slonsky,* 19 Ariz.App. at 68, 504 P.2d at 1291.

Before examining whether Oliver abused the conditional privilege we turn to the constitutional issues. We do this because if

Lewis is a public official, he must demonstrate actual malice; excessive publication would not suffice.

## II. CONSTITUTIONAL ISSUES

We begin our discussion with the seminal case of *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 725–26, 11 L.Ed.2d 686 (1964), in which the Supreme Court held that a public official suing for defamation must show that the defendant made the defamatory statement with "actual malice," which is defined as knowing it to be false or with reckless disregard for its truth or falsity. One of the principles underlying the case was the following: "Criticism of government is at the very center of the constitutionally protected area of free discussion. Criticism of those responsible for government operations must be free, lest criticism of government itself be penalized." *Rosenblatt v. Baer*, 383 U.S. 75, 85, 86 S.Ct. 669, 675, 15 L.Ed.2d 597 (1966).

■ Oliver claims that *New York Times* applies because Lewis is a public official and failed to prove actual malice with the requisite clarity. Our review of this latter issue is regulated by *Currier v. Western Newspapers, Inc.*, 175 Ariz. 290, 855 P.2d 1351 (1993). *Currier* requires the appellate court in reviewing a summary judgment to determine whether there are genuine issues of material fact which, if resolved in favor of the plaintiff (Lewis), would permit a jury to determine by clear and convincing evidence that defendant (Oliver) knew the falsity of his statements or entertained serious doubts as to their truth. *Id.*, 175 Ariz. at 293, 855 P.2d at 1354; *see Dombey v. Phoenix Newspapers, Inc.*, 150 Ariz. 476, 486–87, 724 P.2d 562, 572–73 (1986) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986)). This standard of review is somewhat different than as stated by the dissent. This court

does not review the evidence on actual malice to determine if it is clear and convincing. We review the evidence to determine whether it would permit a jury to find by clear and convincing evidence that the defendant knew the falsity of his statements or had serious doubts as to their truth. We must do this in the context of an appeal from summary judgment. *See Orme School v. Reeves*, 166 Ariz. 301, 802 P.2d 1000 (1990).

### A. Public Official

■ The parties dispute whether Lewis is a public official. In *New York Times* the Supreme Court did not express "how far down into the lower ranks of government employees the 'public official' designation would extend...." 376 U.S. at 283, n. 23, 84 S.Ct. at 727, n. 23. In *Rosenblatt*, the Court provided more guidance. The Court first stated: "It is clear, therefore, that the 'public official' designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." 383 U.S. at 85, 86 S.Ct. at 675–76 (footnote omitted). Seizing on this statement Lewis argues that, as an inspector on the bottom rung of the FAA ladder, he cannot be held to be a public official.[2] This argument takes the quotation out of context and ignores what the Supreme Court stated next:

Where a position in government has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees, both elements we identified in *New York Times* are present and the *New York Times* malice standards apply.

383 U.S. at 86, 86 S.Ct. at 676 (footnotes omitted).[3]

---

**2.** Appellant cites *French v. Civil Aeronautics Bd.*, 378 F.2d 468 (10th Cir.1967), for the proposition that "an FAA inspector lacks the authority to vary his inspection, let alone to choose who is inspected or the sanction to be imposed. An FAA inspector, like Lewis, simply cannot be considered a public official for the purposes of the

law of defamation." Appellant's Reply Br. at 13–14.

**3.** This is tempered by the caveat that "[t]he employee's position must be one which would invite public scrutiny and discussion of the person holding it, entirely apart from the scrutiny and discussion occasioned by the particular charges

We hold Lewis is a public official under the *Rosenblatt* test. An FAA inspector's job has a direct effect on air transportation, something in which the general public has an intense and justified interest. Whether an inspector's performance is affected by improper motives that might lead him to perjure himself in a hearing on an air carrier's license, or be influenced by irrelevant matters, is something of general import. Oliver's accusations did not thrust Lewis into the limelight but merely illustrate one aspect of the public's interest in the honesty and integrity of the people who inspect the air industry.

An FAA inspector can also be analogized, albeit imperfectly, to police officers, who have been held to be public officials by the Arizona courts. *See, e.g., Turner v. Devlin,* 174 Ariz. 201, 848 P.2d 286 (1993); *Godbehere v. Phoenix Newspapers, Inc.,* 162 Ariz. 335, 783 P.2d 781 (1989); *Rosales v. City of Eloy,* 122 Ariz. 134, 593 P.2d 688 (App.1979); *cf. Angel v. Ward,* 258 S.E.2d at 791 (IRS agent was a public official). Furthermore, if a public school teacher, *see Sewell v. Brookbank,* 119 Ariz. 422, 581 P.2d 267 (App.1978), and a student senator, *see Klahr v. Winterble,* 4 Ariz.App. 158, 418 P.2d 404 (1966), are public officials, then *a fortiori* an FAA inspector is also. *See generally* E.H. Schopler, Annotation, *Libel and Slander: Who is a Public Official or Otherwise within the Federal Constitutional Rule Requiring Public Officials to Show Actual Malice,* 19 A.L.R.3d 1361 (1968).

In short, we hold that Lewis is a public official and consequently must establish actual malice in order to recover. We turn now to that subject.

**B. Actual Malice**

■ *New York Times* defines actual malice as knowledge that the statement is false or reckless disregard for its truth or falsity. 376 U.S. at 279–80, 84 S.Ct. at 725–26. The plaintiff must adduce "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the

truth of his publication." *Dombey,* 150 Ariz. at 487, 724 P.2d at 573 (quoting *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968)); *see Masson v. New Yorker Magazine, Inc.,* 960 F.2d 896, 900 (9th Cir.1992); *Selby v. Savard,* 134 Ariz. 222, 225, 655 P.2d 342, 345 (1982). Lewis makes several different arguments to support establishing evidence of actual malice. We discuss them in order.

First, Lewis notes there is evidence that Oliver told Bessette in the September 14, 1989 meeting that he was "out to get" Lewis in connection with his statements. We believe this evidence is sufficient to create a jury question as to whether Oliver's accusations were knowingly false. *Currier v. Western Newspapers, Inc.,* 175 Ariz. at 293, 855 P.2d at 1354.

Second, Lewis claims that Oliver continued to accuse him of perjury and abuse of office even after Oliver learned of an internal FAA investigation "exonerating" Lewis of Oliver's charges. Lewis relies on *Selby v. Savard,* in which the court found that the defendant's publication of allegations of criminal activity by plaintiff, despite the defendant's knowledge of an investigation exonerating plaintiff, was proof that the defendant acted with actual malice. The supreme court held this evidence sufficient to establish actual malice:

> In this case, Savard continued publishing the accusations against Selby even though he had been advised by his own counsel and DPS Officer Carl Needham that the allegations lacked merit and even though he had settled a prior lawsuit over the same allegations with the same party. In addition, Savard admitted that as to at least one allegation he had no evidence whatever.

> We find that this evidence overwhelmingly shows that Savard had actual knowledge of the probable falsity of the allegations and published them with, at the very least, reckless disregard of whether they were true or false.

in controversy." *Id.* 383 U.S. at 86, n. 13, 86 S.Ct. at 676, n. 13. Thus, a night watchman accused of stealing state secrets is not trans-

formed into a public official by the publicity surrounding the accusation. *Id.*

134 Ariz. at 225–26, 655 P.2d at 345–46. The evidence in *Selby v. Savard* was "overwhelming[ ]." The evidence here is sufficient to create a jury question. The Bessette report concludes that many of Oliver's statements were false.

Lewis's third argument is that Oliver had exhibited a pattern of defaming and intimidating individuals who criticized Westcor. This evidence of past vindictiveness further supports our determination that a jury could find that Oliver "entertained serious doubts as to the truth of his publication."

Fourth, Lewis asserts that Oliver accused him of abuse of office and perjury knowing that Westcor had a history of serious safety problems. In the trial court, Lewis argued:

> The picture that emerges is of a corporate officer who, when caught in safety violations of which he is aware, decides to crush the government inspector who uncovered the safety violations as an act of malicious revenge. A question of fact exists as to whether Oliver made his accusations with malice, and Lewis is entitled to his day in court before a jury to pursue justice and the exoneration of Lewis's reputation.

Once again, we have determined that the evidence is sufficient to create a jury question. *Currier v. Western Newspapers, Inc.*, 175 Ariz. at 293, 855 P.2d at 1354.

Finally, Lewis argues that Oliver was guilty of "excessive publication," *i.e.*, he communicated the allegedly defamatory material to persons outside the scope of the investigation. If true, this would suffice to remove the conditional privilege if Lewis were not a public official. But we have determined that Lewis is such an official and must demonstrate actual malice. Excessive publication does not amount to evidence that the speaker had serious doubts about the truth of his statements.

Based on our review of the record, we conclude there is sufficient evidence from which a jury could conclude that Oliver's statements were made with actual malice. Therefore, we remand the case to the trial court. The remaining substantive counts (intentional infliction of emotional distress, interference with business relationship) grow out of the same conduct. *See Drummond v. Stahl*, 127 Ariz. at 125, 618 P.2d at 619. Consequently, they must be considered upon remand. *See also* Restatement (Second) of Torts, Chap. 25. Finally, Lewis's count for conspiracy is derivative, depending for its existence upon the substantive torts and therefore must be considered on remand. *See Tovrea Land & Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 131, 412 P.2d 47, 63 (1966).

## III. THE TRIAL COURT'S DENIAL OF APPELLANT'S RULE 56(f) MOTION

■ Lewis argues that the trial court erred in denying a motion under Rule 56(f), Arizona Rules of Civil Procedure, for more time to respond to the motion for summary judgment. Rule 56(f) allows a party to request additional time to respond to a motion for summary judgment in order to undertake necessary additional discovery. *Wells Fargo Credit Corp. v. Smith*, 166 Ariz. 489, 493, 803 P.2d 900, 904 (App.1990). We will not disturb the trial court's Rule 56(f) ruling absent an abuse of discretion. *Bobo v. John W. Lattimore, Contractor*, 12 Ariz.App. 137, 141, 468 P.2d 404, 408 (1970).

■ To succeed under Rule 56(f), the moving party must present an affidavit informing the court of: (1) the particular evidence beyond the party's control; (2) the location of the evidence; (3) what the party believes the evidence will reveal; (4) the methods to be used to obtain it; and (5) an estimate of the amount of time the additional discovery will require. *Id.* The record in this matter contains neither Lewis's Rule 56(f) motion nor a supporting affidavit and it is impossible for this court to conclude that the trial court abused its discretion in denying any such request. We will consider only those matters in the record before us and presume that, as to matters not in our record, the record before the trial court supported its ruling. *National Advertising Co. v. Arizona Dep't of Transp.*, 126 Ariz. 542, 544, 617 P.2d 50, 52 (App.1980).

## IV. STATUTE OF LIMITATIONS

Having determined that there was evidence sufficient to create a jury question, we

now address Oliver's arguments that the statute of limitations bars this action.

In his answering brief, Oliver argues that alleged defamations which were made more than one year before the complaint was filed are barred by the one-year Statute of Limitations. A.R.S. § 12–541. Oliver states that any action for defamation based on a publication before January 17, 1989, is time-barred since the complaint was filed on January 17, 1990. *Glaze v. Marcus,* 151 Ariz. 538, 729 P.2d 342 (App.1986); *Duhammel v. Star,* 133 Ariz. 558, 653 P.2d 15 (App.1982).

■■■ We first note that Oliver did not file a cross-appeal as to the statute of limitations issue. Therefore we must determine whether the question is properly preserved as a cross-issue. This court has held that in the absence of a cross-appeal, an appellee may raise a cross-issue in its answering brief only when it meets these criteria:

> (1) The cross-issue must be an argument in support of the judgment, not merely in support of the ultimate disposition on grounds that would attack the judgment;
> (2) The cross-issue must have been presented and considered by the trial court in rendering the judgment, **whether or not the trial court ultimately rejected or simply ignored the issue in a disposition;** and
> (3) The cross-issue must not result in an enlargement of appellee's rights or a lessening of appellant's rights on appeal.

Issues that do not meet this test, assuming they are otherwise appealable, must be the subject of a timely notice of cross-appeal. *Larkin v. State,* 175 Ariz. 417, 424–25, 857 P.2d 1271, 1278–79 (1992) (emphasis added in original) (quoting *Bowman v. Board of Regents,* 162 Ariz. 551, 559, 785 P.2d 71, 79 (App.1989)). Rule 13(b) of the Arizona Rules of Civil Appellate Procedure has been amended effective December 1, 1992, to clarify the cross-appeal procedure. However, the rule was amended after this appeal was filed and therefore is not applicable to this case. Appellee Oliver did not file a notice of cross-appeal. This issue was first raised in his answering brief. The issue does not meet

the *Bowman* criteria set forth above for a cross-issue. Therefore this court will not consider the issue.

The summary judgment in favor of the appellee/defendant is reversed and this case is remanded to the trial court for further proceedings not inconsistent with this opinion.

GARBARINO, J., concurs.

NOYES, Judge, dissenting:

I respectfully dissent from the majority's conclusion that "plaintiff presented evidence sufficient to create a jury question on whether the defendant acted with actual malice." *Supra* p. ——, 873 P.2d p. 670.

## I.

In a defamation action by a public-figure plaintiff, "actual malice" has a special meaning and a heightened standard of proof.

> The burden of proving "actual malice" requires the plaintiff to demonstrate with clear and convincing evidence that the defendant realized that his statement was false or that he subjectively entertained serious doubt as to the truth of his statement.

*Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 511 n. 30, 104 S.Ct. 1949, 1965 n. 30, 80 L.Ed.2d 502 (1984).

The "clear and convincing evidence" standard applies at the summary judgment stage of the proceedings. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). If the evidence presented at the summary judgment stage "is of insufficient caliber or quantity to allow a rational finder of fact to find actual malice by clear and convincing evidence," then the defendant should be granted summary judgment because the evidence is insufficient as a matter of law and there is no reason for a trial. *Id.* at 254, 106 S.Ct. at 2513.

Our duty as an appellate court is to "examine the entire record and make an independent decision as to whether there is clear and convincing evidence to support a finding of [actual] malice." *Starkins v. Bateman,* 150 Ariz. 537, 539, 724 P.2d 1206, 1208 (App.

1986); *see also Bose,* 466 U.S. at 514, 104 S.Ct. at 1967. Having independently examined the entire record, I conclude that the evidence presented is insufficient for a reasonable jury to find that "actual malice had been shown with convincing clarity." *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2515.

## II.

Lewis made four arguments regarding evidence of "actual malice," and the majority agreed with all of them. Three of these arguments were based on Oliver's bad motive or ill will: 1) Oliver was "out to get" Lewis, 2) Oliver exhibited a pattern of defaming and intimidating individuals who criticized his company, and 3) Oliver's actions were malicious revenge because Lewis uncovered safety problems at Oliver's company. The majority concludes that this evidence of bad motive or ill will, by itself, is "sufficient to create a jury question as to whether Oliver's accusations were knowingly false." *Supra* p. 337–338, 873 P.2d p. 675–676.

The majority cites *Currier v. Western Newspapers, Inc.,* 175 Ariz. 290, 293–94, 855 P.2d 1351, 1354–55 (1993) in support of its conclusion that evidence of bad motive is evidence of "actual malice." *See supra* p. 337, 873 P.2d p. 675. *Currier* is ambiguous support for the proposition for which it is cited. *Currier* cited *Harte–Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 667–68, 109 S.Ct. 2678, 2686, 105 L.Ed.2d 562 (1989), for the general proposition that "evidence concerning motive is relevant to actual malice." [4] *See Currier,* 175 Ariz. at 294, 855 P.2d at 1355. To say that evidence can be relevant to actual malice is not to say that it can be clear and convincing proof of actual malice. For our purposes, the proposition for which *Currier* cites *Harte–Hanks* is not nearly as instructive as other language directly from *Harte–Hanks:*

> It also is worth emphasizing that the actual malice standard is not satisfied merely through a showing of ill will or

---

**4.** The actual *Harte–Hanks* language to which *Currier* refers is this: "Although courts must be careful not to place too much reliance on such factors [as motive and professional standards of care], a plaintiff is entitled to prove the defen-

"malice" in the ordinary sense of the term.[7]

> [n.7] The trial judge correctly instructed the jury that "[a]ctual malice may not be inferred alone from evidence of personal spite, ill will or intention to injure on the part of the writer."

The phrase "actual malice" is unfortunately confusing in that it has nothing to do with bad motive or ill will.

*Harte–Hanks,* 491 U.S. at 666, 109 S.Ct. at 2685 (citations omitted).

I respectfully suggest that it would be clear error for a trial court to instruct a jury that it could do what the majority has done in this opinion, infer "actual malice" solely from evidence of bad motive or ill will. "Instructions which permit a jury to impose liability on the basis of the defendant's hatred, spite, ill will, or desire to injure are 'clearly impermissible.' '[I]ll will toward the plaintiff, or bad motives, are not elements of the *New York Times* standard.'" *Ross v. Duke,* 116 Ariz. 298, 301, 569 P.2d 240, 243 (App.1977) (quoting *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin,* 418 U.S. 264, 281, 94 S.Ct. 2770, 2780, 41 L.Ed.2d 745 (1974)) (citations omitted).

The other "actual malice" argument by Lewis is that Oliver persisted in making false accusations after Lewis had been "exonerated" by the FAA. Here again, the evidence is far less than clear and convincing. The purported "exoneration" is a report authored by Lewis's immediate supervisor, Bessette, after Bessette reviewed the 1500–page report compiled by the Inspector General in response to Oliver's accusations about Lewis. The Inspector General's lengthy report makes no conclusions about the truth or falsity of Oliver's accusations. In my opinion, neither the Bessette report nor the Inspector General's report, nor the two reports together, provide sufficient evidence from which we as a reviewing court could sustain a jury verdict for Lewis on the defamation claim.

dant's state of mind through circumstantial evidence, and it cannot be said that evidence concerning motive or care never bears any relation to the actual malice inquiry." 491 U.S. at 668, 109 S.Ct. at 2686 (citations omitted).

Although Bessette's report is favorable to Lewis, it is one man's opinion, and that man is Lewis's supervisor. The Bessette report is not an impartial adjudication of the issues and it is not close to the clear and convincing proof of falsity as existed in *Selby v. Savard,* 134 Ariz. 222, 655 P.2d 342 (1982), the case relied on by the majority. That Oliver continued to press his case after learning of Bessette's report says little about whether Oliver knew his accusations were false or whether he had reckless disregard for truth or falsity.

### III.

All of Lewis's claims depend on proof of the defamation claim. An essential element of the defamation claim is clear and convincing evidence of "actual malice." In my opinion, the evidence on "actual malice" is insufficient to create a jury question. I would affirm the trial court grant of summary judgment to Oliver.