812 P.2d 1096

**William HEUISLER, a married man in his sole capacity, Plaintiff–Appellant, Cross–Appellee,**

**v.**

**PHOENIX NEWSPAPERS, INC., an Arizona Corporation, Pat Murphy aka Lorenzo Dow Murphy, individually and in his capacity as Publisher of the Arizona Republic, Defendants–Appellees, Cross–Appellants.**

**No. 1 CA–CV 89–123.**

Court of Appeals of Arizona, Division 1, Department D.

March 5, 1991.

Review Denied July 16, 1991.

---

Richards and Eisenstein by David G. Eisenstein, Tucson, for plaintiff-appellant, cross-appellee.

Gust, Rosenfeld & Henderson by James F. Henderson, Patricia A. Sallen, Phoenix, for defendants-appellees, cross-appellants.

## OPINION

BROOKS, Presiding Judge.

This is an appeal and cross-appeal from a summary judgment in favor of the defense in a libel action. Appellant William Heuis-

ler sued appellees Phoenix Newspapers, Inc., and its publisher, Pat Murphy, based upon statements contained in two articles in the Arizona Republic. The articles reported that Heuisler, who was a candidate for appointment to a position in the administration of former Arizona governor Evan Mecham, had suffered two convictions by military court-martial and another for assaulting a Tucson police officer and had failed to report these convictions when he applied for and renewed his private investigator's license.

Heuisler raises three issues on appeal:

1. Did the trial court err by ruling on the motion for summary judgment before Heuisler had completed discovery?

2. Did Heuisler present sufficient evidence of actual malice to withstand the motion for summary judgment?

3. Is the trial court's decision inconsistent with decisions governing the granting of summary judgment and with recent Arizona case law on libel?

The defendants have cross-appealed, urging that the trial court abused its discretion in refusing to award them attorney's fees.

## FACTUAL BACKGROUND

In early January of 1987, former governor Mecham announced his intention to appoint Heuisler to a post as special investigator in state government. Several days after this announcement, the Arizona Republic printed a lengthy article by columnist Sam Stanton, entitled "Mecham backs Heuisler despite arrest record." Heuisler concedes that the article accurately described an incident that preceded his 1980 conviction on a charge of disorderly conduct. The article reported the nature of the conviction and went on to state:

Heuisler's DPS file also shows he did not report his 1980 arrest and later conviction on his license-renewal application. He said Tuesday he did not file anything with the DPS because the charges were politically motivated.

. . . . .

Tucson police claimed at the time that [Heuisler] had assaulted a police officer outside a bar. He said Tuesday that he put his finger on the chest of an officer because they were having a disagreement over the pronunciation of his name.

On January 18, 1987, four days after the appearance of the Stanton article, the Republic printed an article by publisher Pat Murphy, entitled "Mecham's Handling of Heuisler Affair May Render His Claims Fraudulent." In the course of charging then-governor Mecham with inconsistencies in his role as the "champion of moral high-mindedness," Murphy referred to Heuisler as "one whose life has been checkered with misconduct." Murphy went on to state:

Onetime Tucson policeman William F. Heuisler was court-martialed twice while in the military and served time in the brig, and *was convicted of assault on a policeman in Tucson.*

If some can excuse that, then they'll have to wonder why Mecham, the scourge of deviousness, wants a man at his side who airily decided it was no one's business about his assault conviction in civilian life, and thereupon *knowingly refused to report it on his renewal of his private investigator's license.*

Mecham, the man who deplored Babbitt's "illegal" declaration of the King holiday, suddenly has developed an odd tolerance and understanding of Heuisler's illegal conduct.

Considering how Heuisler last week threatened to break a chair over the head of the Associated Press reporter who wrote the first story about his past, Heuisler also seems to have the mentality and temperament of a barroom brawler.

(Emphasis added.) The following day, the Republic printed a "Correction," which acknowledged that Heuisler's 1980 conviction had been for disorderly conduct, further explaining that "the charge of assaulting a police officer was dropped as part of a plea agreement." Heuisler subsequently withdrew his name from consideration for the investigator's post.

On April 19, 1987, the Republic printed another article by Murphy. This time, responding to criticisms that Mecham had leveled at the press and others, Murphy included Heuisler among those whom the governor had "tried to select or did select for his inner circle [who] are far inferior in character and experience to those he caustically criticizes." Murphy wrote:

There's William Heuisler, the *ne'er-do-well private eye* Mecham wanted as his special investigator to ferret out waste and corruption in government. But Heuisler's two courts-martial and *his dereliction in not reporting to the state his convictions while serving in the Navy* was even more than Mecham could overcome.

(Emphasis added.)

Heuisler commenced this action after the publication of the January 18 article. His complaint, as later amended, included allegations that all of the statements underscored above were libelous, that the defendants knew or had reason to know that they were false, and that, in Murphy's case, they were motivated by spite, ill-will, or the desire to injure.

The defendants moved for summary judgment, contending that the statements were protected opinion, that they were substantially true, and that Heuisler, a public figure, had failed to establish actual malice. In addition, asserting that Heuisler's counsel had filed suit without adequate investigation, that the action was groundless, constituted harassment, and was not brought in good faith, the defendants sought attorney's fees under Rule 11, Arizona Rules of Civil Procedure, and A.R.S. sections 12–341.01(C) and 12–349.

The trial court granted the defendants' motion for summary judgment, finding that opinion such as the Murphy articles was protected communication, that the statements in the articles were substantially true, and that Heuisler was a public figure who had failed to show actual malice. However, finding no basis upon which to conclude that the action was frivolous, the trial court denied the defendants' request for attorney's fees.

## THE APPEAL

### 1. *Inability to Complete Discovery*

Heuisler first argues that the trial court abused its discretion by ruling on the motion for summary judgment before he had completed court-ordered discovery on the issue of actual malice. Even if we were to assume that the information that Heuisler sought was relevant to actual malice, we would find no error.

Heuisler wanted to establish that Murphy's attempts to discredit him were motivated by a desire to conceal the publisher's alleged involvement in a 1975 hit-and-run accident. A discovery dispute arose when counsel for the defendants advised several deponents not to answer questions on this subject. Heuisler's counsel filed a motion to compel the deponents to answer. On the same date, the defendants filed their motion for summary judgment. Heuisler responded to the motion for summary judgment and filed his own cross-motion for partial summary judgment on the issue of falsity. The trial court heard argument on all three motions and took them under advisement.

The trial court ruled first on Heuisler's motion to compel discovery. Finding that defense counsel should have permitted the deponents to answer the questions, subject to objections, the trial court gave Heuisler thirty days to complete discovery and imposed sanctions against the defense. The depositions had been noticed but were continued by stipulation when the trial court granted the defendants' motion for summary judgment and denied Heuisler's cross-motion. Heuisler now complains that he was denied the right to discovery on an issue directly related to the trial court's judgment.

■ If Heuisler was not in a position to meet the defendants' motion for summary judgment because discovery was incomplete, he should have requested a continuance or filed an affidavit in compliance with Rule 56(f), Arizona Rules of Civil Procedure, explaining why he was then unable to present facts essential to justify his op-

position. *See Phil W. Morris Co. v. Schwartz*, 138 Ariz. 90, 673 P.2d 28 (App. 1983). By failing to do so, Heuisler in effect conceded that he had sufficient facts to withstand the motion for summary judgment. We conclude that he has waived his right to complain that the trial court's ruling was premature.

■ Furthermore, as discussed below, evidence tending to show that Murphy may have had a personal motive to deprive Heuisler of the appointment, although perhaps relevant to show spite or ill-will amounting to *common law malice*, would not establish knowledge of falsity or reckless disregard for the truth, the defining characteristics of *actual malice* when dealing with a public figure. Heuisler and his counsel have repeatedly failed to appreciate the distinction between these two concepts.

### 2. *Actual Malice*

Thus we turn to Heuisler's argument that the trial court erred in finding that he had failed to present clear and convincing evidence of actual malice.[1] In the course of our discussion, we also examine Heuisler's contention that the trial court's decision is inconsistent with case law governing the granting of summary judgment and with this court's decision in *Scottsdale Publishing, Inc. v. Superior Court*, 159 Ariz. 72, 764 P.2d 1131 (App.1988).

■ First, citing *Gregg v. National Medical Health Care Services, Inc.*, 145 Ariz. 51, 699 P.2d 925 (App.1985), Heuisler maintains that summary judgment is improper when the slightest doubt exists as to the essential facts. We note that our supreme court has recently redefined the standard to be applied in ruling on a motion for summary judgment, holding that it is same as that used for a directed verdict. *See Orme School v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990) ("Either motion should be granted if the facts produced in support of the claim or defense

have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense.")

In a defamation case, if the factual dispute concerns actual malice, the trial court's summary judgment inquiry is "whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not." *Scottsdale Publishing*, 159 Ariz. at 83, 764 P.2d at 1142 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–56, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986)). We apply the same standard on review.

In this case, Heuisler has attempted to rest his claim of actual malice primarily upon evidence that Murphy was "out to get him." He asserts that Murphy's actions were motivated by a desire to perpetuate a police department cover-up regarding the 1975 hit-and-run accident. Actual malice, however, is not established through a showing of bad motives or personal ill-will. *See Ross v. Duke*, 116 Ariz. 298, 569 P.2d 240 (App.1976).

Proof of actual malice requires clear and convincing evidence that the defendants published either with knowledge that the defamatory statements were false or with reckless disregard for whether the statements were true or false. *New York Times v. Sullivan*, 376 U.S. 254, 279–86, 84 S.Ct. 710, 725–29, 11 L.Ed.2d 686 (1964). The evidence must be sufficient "to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Dombey v. Phoenix Newspapers*, 150 Ariz. 476, 487, 724 P.2d 562, 573 (1986) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731–32, 88 S.Ct. 1323, 1325–26, 20 L.Ed.2d 262 (1968)).

■ Aside from allegations of spite and ill-will, Heuisler presented the following evidence to support his claim of actual malice.

---

1. Heuisler does not dispute the trial court's determination that he was a public figure. As a consequence, he acknowledges that he may recover damages in this case only upon proof of

actual malice. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *Dombey v. Phoenix Newspapers, Inc.*, 150 Ariz. 476, 724 P.2d 562 (1986).

Murphy's preparation for the January 18 article consisted of an interview with Stanton that lasted only forty-five seconds and a review of newspaper clippings, including Stanton's substantially correct account of Heuisler's 1980 arrest and conviction. Heuisler contends that these facts alone create a jury question on actual malice. He also urges that a grand jury's refusal to indict him for covering up his convictions should have caused Murphy to doubt the truth of the statement in his April 19 article regarding Heuisler's "dereliction" in failing to report those convictions when he applied for his private investigator's license.

In our view, this evidence falls far short of that necessary to support a reasonable jury finding of actual malice. It is well established that "failure to investigate, sloppy investigation, poor reporting practice and the like are not per se actual malice." *Dombey*, 150 Ariz. at 488, 724 P.2d at 574. At worst, Murphy's method of preparation amounted to negligence.

Furthermore, no reasonable jury would interpret either the Stanton article or the grand jury's refusal to indict Heuisler as clear and convincing evidence that the defendants entertained serious doubts about the truth of their publications. Stanton's article did accurately report that Heuisler had been convicted of disorderly conduct and not, as Murphy later stated, of assault on a police officer. Nevertheless, the unmistakable inference to be drawn from the Stanton article was that the conduct that had formed the basis for Heuisler's conviction was his assault on a police officer.[2]

■ Again, Murphy's failure to attend more closely to Stanton's identification of the precise nature of the conviction—a detail that was significant to Heuisler, but not to Murphy, who was more interested in the underlying conduct—may evidence carelessness. However, it hardly establish-

es reckless disregard for the truth, especially in light of the newspaper's publication of an immediate and unsolicited correction regarding the nature of Heuisler's conviction. *Cf. Dombey*, 150 Ariz. at 490, 724 P.2d at 576 (evidence of malice was sufficient to create jury question where defendants had correct information in their possession, but never attempted to verify it, instead repeating earlier inaccuracies even after being informed that they were untrue).

■ Nor should a grand jury's refusal to indict Heuisler for "covering up" his military convictions have caused Murphy to doubt the truth of his accusation that Heuisler had been derelict in failing to report them. Heuisler does not deny the convictions, his duty to report them, or his failure to do so.[3] Assuming that Murphy's description of Heuisler's conduct as "dereliction" might reasonably be interpreted as a statement of fact, we fail to see what "truth" Murphy could be said to have recklessly disregarded in this respect.

We conclude that the trial court correctly granted the defendants' motion for summary judgment. No reasonable jury could have interpreted the evidence as clear and convincing evidence of actual malice.

### 3. *Other Case Law on Libel*

■ There is one aspect of Heuisler's final argument that we have not addressed. Citing *AMCOR Investment Corp. v. Cox Arizona Publications, Inc.*, 158 Ariz. 566, 764 P.2d 327 (App.1988), and *Milkovich v. Lorain Journal Co.*, 497 U.S. ——, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990), Heuisler argues that the trial court erred in finding the defendants' report of his criminal conviction to be constitutionally protected opinion. We agree that the report of a criminal conviction amounts to a statement of fact rather than opinion, but any error in this

**2.** Although police reports substantiate this version of the facts, Heuisler has since maintained that the conviction was based upon his conduct inside the bar, and not upon his later altercation with the police officer. This distinction might be relevant in determining whether the "Correc-

tion" was completely accurate, but it has no bearing on actual malice.

**3.** He does point out that he served in the Marines, and not in the Navy as reported, but he does not seriously contend that this misstatement was defamatory.

regard would be harmless in view of our conclusion that Heuisler failed to show actual malice. We therefore decline to reach this issue. For the same reason, we find it unnecessary to examine the trial court's determination that any or all of the statements in question were substantially true.

## CROSS–APPEAL

The defendants argue that the trial court "abused its discretion" when it refused to award attorney's fees as a sanction under Rule 11, Arizona Rules of Civil Procedure, or pursuant to either A.R.S. section 12–341.01(C) or section 12–349. Although abuse of discretion is not the appropriate standard of review in this case, we find no error in the trial court's determination that an award of attorney's fees was unwarranted.

The Arizona Supreme Court has set forth the circumstances in which Rule 11 is violated:

> Rule 11 is violated by the filing of a pleading when the party or counsel knew, or should have known by such investigation of fact and law as was reasonable and feasible under all the circumstances, that the claim or defense was insubstantial, groundless, frivolous, or otherwise unjustified. It is also violated by the filing of pleadings for an improper purpose such as those intended to harass, coerce, extort, or delay.

*Boone v. Superior Court*, 145 Ariz. 235, 241–42, 700 P.2d 1335, 1341–42 (1985). Similarly, A.R.S. section 12–341.01(C) requires the court in any contested action to award attorney's fees "upon clear and convincing evidence that the claim or defense constitutes harassment, is groundless and not made in good faith." Under A.R.S. section 12–349, the court is directed to "assess reasonable attorney fees, expenses and, at the court's discretion, double damages of not to exceed five thousand dollars against an attorney or party" who brings or defends a claim "without substantial justification," or "solely or primarily for delay or harassment." That section further provides that " 'without substantial justification' means that the claim or de-

fense constitutes harassment, is groundless and is not made in good faith."

The defendants contend that Heuisler's attorneys failed to conduct an adequate investigation into the facts or the law, that Heuisler himself knew that the allegedly defamatory statements were substantially true, and that he continued to pursue the matter despite the lack of evidence to justify his theory of malice. Whatever authority the defendants rely upon to support their request for fees, the essence of their argument is that Heuisler's cause of action was groundless and/or maintained for an improper purpose. The trial court disagreed, finding that legitimate differences of opinion existed over the interpretation of the facts and that these differences did not form a basis for concluding that Heuisler's cause of action was groundless, harassing, insincere, or frivolous.

■ An abuse of discretion standard applies when we review a discretionary award of attorney's fees, *see, e.g., Suciu v. AMFAC Distrib. Corp.*, 138 Ariz. 514, 675 P.2d 1333 (App.1983), and when we consider whether the amount of fees awarded was reasonable, *see, e.g., Harris v. Reserve Life Ins. Co.*, 158 Ariz. 380, 762 P.2d 1334 (App.1988), or whether a sanction imposed under Rule 11 was appropriate, *see Gilbert v. Board of Medical Examiners*, 155 Ariz. 169, 184, 745 P.2d 617, 632 (App.1987). However, when we review the findings of fact used by the trial court to determine that Rule 11 has been violated or that the action was groundless, harassing, and in bad faith, we view the evidence in a manner most favorable to sustaining the award, affirming unless the trial court's findings are clearly erroneous. *Gilbert*, 155 Ariz. at 181, 184, 745 P.2d at 629, 632. In this case, we find that the record supports the trial court's findings.

■ The defendants urge that if Heuisler's attorneys had undertaken a reasonable investigation of fact and law, they would have known that the action was unjustified not only because the allegedly defamatory statements constituted protected

opinion and were "substantially true," [4] but also because no evidence existed to support a claim of actual, as opposed to common law, malice. We disagree. First, as we have already stated, the report of Heuisler's criminal conviction was a statement of fact, not opinion. Second, although we have not addressed the issue of substantial truth, we believe that Heuisler presented a legally defensible argument that the report of his conviction for assaulting a police officer was *not* substantially true. *See Read v. Phoenix Newspapers, Inc.*, 167 Ariz. 241, 805 P.2d 1062 (App.1990).[5] Third, although Heuisler's evidence of actual malice failed to meet the clear and convincing standard necessary to withstand the defendants' motion for summary judgment, we do not find his evidence so lacking as to render the claim unjustified.

Finally, we are unable to state that the trial court clearly erred in finding that Heuisler's claim did not constitute harassment and was not made in bad faith or for some improper purpose. Considering the trial court's personal contact with the parties and their attorneys, it was in a far better position than we are to assess their subjective intent. We find no error.

## CONCLUSION

We affirm the summary judgment in favor of the defendants and the trial court's refusal to award attorney's fees. As we have rejected the defendants' contention that this cause of action was groundless in the trial court, so do we reject their suggestion that the appeal was frivolous. Accordingly, we deny their request for attorney's fees on appeal under Rules 21 and 25, Arizona Rules of Civil Appellate Procedure.

TAYLOR, J., concurs.

**4.** The defendants would not be liable for publishing a statement that although not literally true, was substantially true. *See Fendler v. Phoenix Newspapers*, 130 Ariz. 475, 636 P.2d 1257 (App.1981). Slight inaccuracies will not prevent a statement from being true in substance, as long as the "gist" or "sting" of the publication is justified. *Id.*

**5.** The special concurrence, *infra,* is essentially a dissent against *Read,* a case in which this court

FIDEL, Judge, specially concurring:

The majority neither adopts nor rejects the trial court's finding that the challenged publications were substantially true. However, in disposing of the cross-appeal, the majority upholds the trial court's denial of Rule 11 sanctions for the reason, among others, "that Heuisler presented a legally defensible argument that the report of his conviction for assaulting a police officer was not substantially true." In support of this conclusion, the majority cites *Read v. Phoenix Newspapers, Inc.*, 167 Ariz. 241, 805 P.2d 1062 (App.1990), a recent decision by this court.

I write separately because I approach this issue differently than the majority and because I cannot join in endorsing *Read* to illustrate the law of substantial truth.

A defendant in a defamation suit need not "establish the literal truth of the precise statement made." *Fendler v. Phoenix Newspapers Inc.*, 130 Ariz. 475, 479, 636 P.2d 1257, 1261 (1981) (quoting *Restatement (Second) of Torts* § 581(A) comment f (1977)). Summary judgment for defendant is proper when "the gist [or] sting" of the charge is substantially true. *Fendler,* 130 Ariz. at 479, 636 P.2d at 1261 (quoting *Kurata v. Los Angeles News Publishing Co.*, 4 Cal.App.2d 224, 227, 40 P.2d 520, 522 (1935)); *Liberty Lobby, Inc. v. Dow Jones & Co., Inc.*, 838 F.2d 1287, 1296 (D.C.Cir. 1988).

*Read* illustrates these principles misapplied. A newspaper inaccurately reported that Read, a primary candidate for the U.S. House of Representatives, was convicted of the misdemeanor of "firing a gun after a motorist accidentally leaned on her car horn." The facts were more complex. Read followed the driver to her home, con-

found that questions of fact required reversal of a summary judgment granted in favor of the defendant newspaper on grounds of substantial truth. Judge Fidel's characterization of the facts of *Read* differs somewhat from the version relied upon by the *Read* panel, which was required to view those facts in a light most favorable to the party who opposed summary judgment.

fronted the driver and her passenger, and displayed a weapon in the escalating encounter as the women's friends and family rallied round. A struggle followed, the gun was fired—apparently by accident, and Read was indeed convicted of a misdemeanor. His crime, however, was not "firing a gun," but "exhibiting a weapon not in self-defense." This distinction had substance enough, the *Read* court found, to preclude summary judgment and require a jury trial.

I disagree. First Amendment freedoms are ill-served by defamation trials over trifles. "Erroneous statement is inevitable in free debate, and ... it must be protected if the freedoms of expression are to have the 'breathing space' that they 'need ... to survive.'" *New York Times v. Sullivan*, 376 U.S. 254, 271–72, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964) (quoting *N.A.A.C.P. v. Button*, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963)). The *Read* articles may have been inaccurate in detail, but their sting—that a congressional candidate was a hothead who had brandished a gun in a traffic dispute—was substantially true.

The same may be said in Heuisler's case. Heuisler, likewise a seeker of public office,[1] was not convicted of assault on a police officer, but of disorderly conduct in an incident that included a physical confrontation with the police. The concept of substantial truth is commodious enough for this discrepancy. Here, as in *Read*, the sting was substantially true.

The majority disposes of Heuisler's claim on the ground that Heuisler proved no malice. I agree. I would also affirm, however, on the simpler ground that the challenged publications were substantially true. The Supreme Court has acknowledged that the malice standard, "knowing or reckless disregard," is "not always easy of ascertainment." *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 276, 91 S.Ct. 621, 627, 28 L.Ed.2d 35 (1970). Malice discovery is often extensive, and motion practice frequently complex. The courts might expeditiously end meritless cases and spare parties the cost and delay of malice inquiry by applying the substantial truth standard liberally to provide breathing space for such minor inaccuracies as this and the *Read* case display.[2]

To conclude that a publication is substantially true, however, is not to conclude that a plaintiff has frivolously claimed otherwise. Summary judgment serves the important function in defamation cases of "avoidance of long and expensive litigation productive of nothing," *Washington Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C.Cir. 1966). Yet even in awarding summary judgment, the courts may recognize the frustration of those whose claims they constitutionally reject. *See Gertz*, 418 U.S. at 342, 94 S.Ct. at 3008 ("Some tension necessarily exists between the need for a vigorous and uninhibited press and the legitimate interest in redressing wrongful injury.") Although the inaccuracies Heuisler complains of were too insubstantial for this lawsuit to continue, they were inaccuracies nonetheless, and Heuisler should not be punished for seeking recourse in the courts.

Thus, I join the majority in affirming the denial of attorney's fees, as I join the majority in affirming the finding that Heuisler failed to prove malice. Unlike the majority, however, and without reliance on *Read*, I would also affirm the trial court's finding of substantial truth.

---

1. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345, 94 S.Ct. 2997, 3010, 41 L.Ed.2d 789 (1974)— (Those who seek governmental office "have voluntarily exposed themselves to increased risk of injury from defamatory falsehood....")

2. In *Read*, the defendant apparently attempted to avoid contesting the more complex malice issue by first seeking summary judgment on the simpler ground of substantial truth.