NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT
PRECEDENTIAL AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

WENTIAN YANG, *Plaintiff/Appellant*,

*v.*

ARIZONA CHINESE NEWS, L.L.C.; KIM UNG; JENNY UNG; SHUO
QIN ZEHN, *Defendants/Appellees*.

No. 1 CA-CV 14-0080
FILED 5-19-15

Appeal from the Superior Court in Maricopa County
No.  CV2013-000842
The Honorable David O. Cunanan, Judge

**AFFIRMED**

COUNSEL

HopkinsWay PLLC, Phoenix
By Edward C. Hopkins, Jr.
*Counsel for Plaintiff/Appellant*

Tiffany & Bosco, P.A., Phoenix
By William M. Fischbach
*Counsel for Defendants/Appellees Arizona Chinese News and Shuo Qin Zhen*

Wong Fujii Carter P.C., Phoenix
By Rick K. Carter, Matthew A. Klopp, Susan Larsen
*Counsel for Defendants/Appellees Kim and Jenny Ung*

_____

**MEMORANDUM DECISION**

Judge Jon W. Thompson delivered the decision of the Court, in which Presiding Judge Andrew W. Gould and Judge Maurice Portley joined.

_____

**T H O M P S O N,** Judge:

¶1        Wentian Yang appeals from the judgment dismissing his defamation and related claims against defendants Arizona Chinese News, L.L.C. (ACN) and Shuo Qin Zhen.  For the reasons that follow, we affirm.

## BACKGROUND

¶2        As alleged in the complaint, Yang, an international businessman, assisted the Chinese Consulate General in conducting a passport renewal event at the Chinese Cultural Center in Phoenix on November 17, 2012.  Kim Ung attended the event with Wu Yi, Yang's 95-year-old wheelchair-bound aunt, and distributed to other attendees a letter (Letter) Ung and his wife had written.  Referring to Yang, the Letter, translated from Chinese, states:

> He has seized the land in our village (Quanzhou Lichen District) in which we had invested a large amount of funds.
>
> He falsely claimed the communist government had confiscated the land, according to the policy of reclaiming unused land that remained fallow for years, as the reason and attempted to use horrible methods to forcibly rob the land to reach his own purpose.
>
> Heavens, he made up the lie.
>
> Every month he receives a large rental amount from it.
>
> He is really a big liar and a villain.
>
> Do not ever trust Wen Tian anymore, as a transnational swindler, to avoid fraud.

¶3        Ung also photographed Wu Yi at the event wearing a sign that read:

Wen Tian Yang

Lying Shamelessly

Fraud Scam

Uses Public Office for Private Gain

Oversees Chinese Scam

¶4         Ung distributed copies of the Letter and the photograph to media sources, including ACN.  ACN subsequently published an article on November 21, 2012 that contained the photograph and the text of the Letter (November 21 Article).  An ACN-edited version of the Letter (Edited Letter) also appeared in the November 21 Article.  The Edited Letter stated:

> He misused our land investment in Quanzhou, Fujian Province as the reason to swindle over many years around a hundred thousand dollars from my children.
>
> He even cheated me of my "coffin expense" savings.
>
> Finally, Wen Tian Yang falsely claimed the local government had confiscated the land as a reason and attempted to use horrible methods to forcibly rob our investment money.
>
> He fabricated lies.
>
> He has cheated us for ten years.
>
> He took the huge rental income for himself.
>
> Do not ever trust Wen Tian Yang, the liar.

¶5         In a written response (Yang's Response) that was posted on two Chinese language websites, one of which was ACN's, Yang challenged the November 21 Article's veracity and the lawfulness of its publication by ACN.  ACN published a reply to Yang's Response on November 28, 2012, explaining as follows:  "We reported the contents provided.  We do not know what happened prior.  The reporter was not present when the incident occurred. The picture was taken in public before many witnesses." (November 28 Reply).

¶6 Yang subsequently filed a complaint against the Ungs, ACN, and ACN's president, Zhen (ACN and Zhen, collectively, ACN Defendants). Based on the November 21 Article and the November 28 Reply, Yang sought punitive damages and asserted the following claims against the ACN Defendants: (1) defamation; (2) false light invasion of privacy; (3) tortious interference with business relations; and (4) aiding and abetting.[1] The ACN Defendants successfully moved under Arizona Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)) to dismiss the claims against them that were based on the November 21 Article. According to the parties, the court dismissed the claims after finding the November 21 Article is subject to the "fair reporting privilege."[2]

¶7 Upon completing discovery, the ACN Defendants moved for summary judgment on the remaining claims. They raised the following three bases for relief: (1) Yang became a "limited purpose public figure" by publishing his Response; (2) the November 28 Reply constituted the ACN Defendants' "subjective impression and opinion" of Yang's Response; and, (3) the November 28 Reply is subject to the self-interest privilege. The court granted the motion[3] and entered judgment in accordance with Arizona Rule of Civil Procedure 54(b). Yang appealed. We have jurisdiction pursuant to Arizona Revised Statutes sections 12-120.21(A)(1) (2003), -2101(A)(1) (Supp. 2014).

**DISCUSSION**

**I. Motion to Dismiss: Yang's Claims re November 21 Article**

¶8 Yang argues the court erred in applying the fair reporting privilege and dismissing the defamation and false light claims that arose from the November 21 Article. Alternatively, Yang contends the ACN Defendants abused the privilege by acting with actual malice or through excessive publication.

---

[1] Yang raised additional claims against the Ungs only.

[2] The court dismissed the claims "for the reasons set forth on the record." The transcript from the oral argument at which the court issued its order is not in the record on appeal.

[3] Again, we cannot review the court's "on the record" reasons for granting summary judgment because the transcript from the argument on the motion is not in the record before us.

¶9　　　　　Dismissal under Rule 12(b)(6) is proper when "as a matter of law . . . plaintiffs would not be entitled to relief under any interpretation of the facts susceptible of proof." *Coleman v. City of Mesa*, 230 Ariz. 352, 356, ¶ 8, 284 P.3d 863, 867 (2012) (citation omitted). Consequently, we review a trial court's 12(b)(6) dismissal de novo. *Id.* Specifically, in a defamation case, the existence and scope of any privilege are questions of law that we review de novo. *Sobol v. Alarcon*, 212 Ariz. 315, 317 n.2, ¶ 10, 131 P.3d 487, 489 n.2 (App. 2006). Our examination is limited to the pleading itself. *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7, 189 P.3d 344, 346 (2008). We will "assume the truth of the well-pled factual allegations and indulge all reasonable inferences therefrom." *Id.* However, "mere conclusory statements are insufficient to state a claim upon which relief can be granted." *Id.*

¶10　　　　　The conditional fair reporting privilege provides immunity for defamatory publication of "a report of . . . a meeting open to the public that deals with a matter of public concern . . . ." Restatement (Second) of Torts (Restatement) § 611 (1977); *see also Green Acres Trust v. London*, 141 Ariz. 609, 618, 688 P.2d 617, 626 (1984) (applying Restatement § 611). The scope of the privilege allows "[a]nyone [to] describe what transpired at a public proceeding so long as the publisher provides a fair and accurate rendition." *Green Acres Trust.*, 141 Ariz. at 618, 688 P.2d at 626. Thus, abuse of the privilege occurs only when the publisher does not give a fair and accurate report of the proceeding. Restatement § 611 cmt. a. Furthermore, "the privilege exists even though the publisher himself does not believe the defamatory words he reports to be true and even when he knows them to be false." *Id.*

¶11　　　　　Here, ACN's publication of the Letter and photograph of the displayed sign in the November 21 Article falls within the fair reporting privilege. As alleged in the complaint, ACN merely published the Letter and photograph that Ung sent to the newspaper. Other members of the public that attended the passport event could learn and see for themselves the Letter's and sign's statements; thus, ACN was "merely a substitute for the public eye." *Green Acres Trust*, 141 Ariz. at 618, 688 P.2d at 626. Consequently, ACN's publication of the Letter and the photograph of the sign is a "fair and accurate rendition" of their respective statements. Additionally, the complaint does not allege the passport event was private or otherwise closed to the public. Indeed, the event's title—"Chinese Passport Renewal Event"—indicates the event was open to all Chinese nationals seeking to renew their passports, a purpose which is certainly a

matter of public interest.[4] *See id.* (noting, "If the proceeding is genuinely open, so that the speaker sees what any member of the public could have seen, and the meeting deals with a matter of public interest, the privilege applies.").

¶12 Regarding the Edited Letter in the November 21 Article, Yang argues it is "materially different" from the Letter because it raises the following "three new allegations" not found in the Letter: (1) Yang swindled approximately $100,000; (2) Yang cheated Wu Yi out of her "coffin expenses"; and (3) Yang cheated his family for ten years. Yang contends these differences show that the Edited Letter does not fairly and accurately describe the events described in the Letter. We disagree.

¶13 As noted, for the fair reporting privilege to apply, the report must be fair and accurate. *Supra* ¶ 10. "Accuracy means 'substantially correct,' while fair means balanced." *Green Acres Trust*, 141 Ariz. at 618, 688 P.2d at 626 (citation omitted). In considering whether a report is fair and accurate, "a court must determine whether the report of the public proceeding carries a 'greater sting' in defamatory content than the original publication during the proceeding." *Id*. at 619, 688 P.2d at 627 (citation omitted).

¶14 Here, the Letter and the sign worn by Wu Yi constitute the original publication. Thus, we must determine whether the Edited Letter's defamatory content carries a "greater sting" than the Letter and sign. We agree with Yang that the Edited Letter contains allegations that are not contained in the Letter or the sign. However, the differing allegations merely provide more detail regarding instances of Yang's alleged "fraud" and "swindling." For example, the Edited Letter states Yang swindled approximately $100,000 in addition to Wu Yi's savings for coffin expenses and that he "cheated us for ten years." The Letter and sign generally allege Yang is a "transnational swindler" and "a big liar and a villain" who fraudulently seized others' land in China. We discern no "greater sting" attributable to the detailed allegations in the Edited Letter compared to the general statements contained in the Letter and sign. Accordingly, the Edited

---

[4] The title of the November 21 Article is: "95 year old lady sits in a wheel chair at her nephew's location wearing the complaint to fight for justice." Consequently, it appears ACN considered as newsworthy not the substance of the defamatory statements, but the fact that Yang's aunt was publicly displaying the sign at the passport event.

Letter is fair and accurate and therefore subject to the fair reporting privilege.

¶15        For the above-stated reasons, the November 21 Article is subject to the fair reporting privilege.

¶16        We also reject Yang's assertion that the ACN Defendants abused the fair reporting privilege because they published the November 21 Article with actual malice towards Yang and they excessively published the article.

¶17        In an effort to establish that the ACN Defendants abused the fair reporting privilege, Yang makes a great deal of their "actual malice" in publishing the November 21 Article.  However, he cites no authority for the proposition that a publisher's actual malice somehow renders the fair reporting privilege inapplicable.  The cases he does cite do not address what effect, if any, actual malice has on the viability of a defense based on the fair reporting privilege. *See Currier v. W. Newspapers, Inc.*, 175 Ariz. 290, 293, 855 P.2d 1351, 1354 (1993) ("substantial truth" defense to defamation claim); *Green Acres Trust*, 141 Ariz. at 616-18, 688 P.2d at 624-26 (discussing conditional privileges in general and noting publication with actual malice abuses such privileges; further noting fair reporting privilege is "special" because publisher may make knowingly false defamatory statements without abusing the privilege); *Lewis v. Oliver*, 178 Ariz. 330, 335, 873 P.2d 668, 673 (App. 1993) (communications to public officials regarding the work of their subordinates is subject to conditional privilege).  Absent such authority, we are not persuaded that actual malice applies to show abuse of the special reporting privilege especially given that the privilege permits publication of information the publisher knows is false, which is a factor in determining actual malice in cases where other conditional privileges are asserted. *See Heuisler v. Phoenix Newspapers, Inc.*, 168 Ariz. 278, 282, 812 P.2d 1096, 1100 (App. 1991) ("Proof of actual malice requires clear and convincing evidence that the defendants published either with knowledge that the defamatory statements were false or with reckless disregard for whether the statements were true or false.").

¶18        Yang contends the November 21 Article was excessively published because the ACN Defendants posted it online in addition to mailing free print copies to recipients in the United States and China. *See Green Acres Trust*, 141 Ariz. at 616, 688 P.2d at 624 ("Once a defendant demonstrates that a conditional privilege may apply, the plaintiff may then prove an abuse of that privilege either by proving publication with 'actual malice' or by demonstrating excessive publication.").  However, Yang cites

no authority for his assertion that, on the facts of this case, excessive publishing negates the fair reporting privilege. We therefore do not address whether the ACN Defendants abused the fair reporting privilege on these bases. *See Cullum v. Cullum*, 215 Ariz. 352, 355 n.5, ¶ 14, 160 P.3d 231, 234 n.5 (App. 2007) (appellate courts "will not consider argument posited without authority."); ARCAP 13(a)(7) (requiring appellant to present significant arguments, set forth his or her position on the issues raised, and include citations to relevant authorities, statutes, and portions of the record.).

¶19 Because the fair reporting privilege applies to the November 21 Article, the court properly dismissed Yang's defamation and other claims stemming from the publication of that article. *See, e.g., Lakeshore Cmty. Hosp., Inc. v. Perry*, 212 Mich. App. 396, 401, 538 N.W.2d 24, 27 (1995) ("As with defamation actions, where the conduct allegedly causing the business interference is a defendant's utterance of negative statements concerning a plaintiff, privileged speech is a defense."); Restatement (Second) of Torts § 652G (1977) ("The rules on conditional privileges to publish defamatory matter . . . , and on the special privileges . . . , apply to the publication of any matter that is an invasion of privacy.").[5]

---

[5] Regarding his claim for aiding and abetting, Yang merely alleged the following:

> ACN, Mr. Zhen, Mr. Ung, and Mrs. Ung substantially helped and encouraged one another to publish false and derogatory statements about Mr. Yang to members of the parties' communities.

> ACN, Mr. Zhen, Mr. Ung, and Mrs. Ung substantially helped and encouraged one another to intentionally interfere with Mr. Yang's business relations.

*See Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 485, ¶ 34, 38 P.3d 12, 23 (2002) (as an element of an aiding and abetting claim, plaintiff must prove defendant substantially assisted or encouraged the primary tortfeasor). Without further factual allegations in the complaint, the above-referenced allegations are conclusory and insufficient to survive a Rule 12(b)(6) motion. *See Coleman*, 230 Ariz. at 356, ¶ 9, 284 P.3d at 867 ("In determining if a complaint states a claim on which relief can be granted, courts must

## II.  Summary Judgment:  ACN's November 28 Reply

¶20          We review de novo the grant of a motion for summary judgment. *Tierra Ranchos Homeowners Ass'n v. Kitchukov*, 216 Ariz. 195, 199, ¶ 15, 165 P.3d 173, 177 (App. 2007). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c)(1). We will affirm a grant of summary judgment if the trial court was correct for any reason. *City of Tempe v. Outdoor Sys., Inc.*, 201 Ariz. 106, 111, ¶ 14, 32 P.3d 31, 36 (App. 2001).

¶21          Here, Yang did not dispute the ACN Defendants' statement of facts supporting their summary judgment motion. Thus, he is constrained to challenging the legal basis of the court's grant of summary judgment.  But the various arguments Yang raises reflect his apparent misapprehension regarding the content and purpose of the November 28 Reply.  Our review of the November 28 Reply reveals it was published to address the allegations in Yang's Response regarding the ACN Defendants' purported illegal publication of the November 21 Article.

¶22          In his Response to the November 21 Article, Yang did not merely challenge the truthfulness of the defamatory comments contained in the article, he also asserted the ACN Defendants' publication of it was unlawful. And by doing so, Yang inserted his views into the public controversy regarding the First Amendment rights of the ACN Defendants to publish the November 21 Article.  Yang thus became a "limited purpose public figure" for purposes of resolving his defamation claim against the ACN Defendants. *See Dombey v. Phoenix Newspapers, Inc.*, 150 Ariz. 476, 483, 724 P.2d 562, 569 (1986) (noting, "An individual may become a public figure if he 'thrust[s] himself or his views into public controversy to influence others.'") (quoting *Hutchinson v. Proxmire,* 443 U.S. 111, 135 (1979)).

¶23          As a public figure, Yang was required to produce evidence of the ACN Defendants' actual malice in publishing the November 28 Reply. *See Morris v. Warner*, 160 Ariz. 55, 63, 770 P.2d 359, 367 (App. 1988).  "A statement is made with actual malice when the declarant makes the statement with knowledge that it was false or with reckless disregard for

---

assume the truth of all well-pleaded factual allegations and indulge all reasonable inferences from those facts, but mere conclusory statements are insufficient.").

the truth." *Id.* Actual malice can only be sufficiently proved with clear and convincing evidence. *Id.*

¶24 Our review of the record reveals no evidence that the ACN Defendants published the November 28 Reply either knowing it contained false statements or with reckless disregard for its veracity. *See Heuisler*, 168 Ariz. at 282, 812 P.2d at 1100 ("Proof of actual malice requires clear and convincing evidence that the defendants published either with knowledge that the defamatory statements were false or with reckless disregard for whether the statements were true or false."). Accordingly, the ACN Defendants were entitled to summary judgment on the defamation claim.

¶25 Because the November 28 Reply amounted to protected speech, Yang's tortious interference and false light claims also were properly dismissed on summary judgment. *See Western Technologies, Inc. v. Sverdrup & Parcel, Inc.*, 154 Ariz. 1, 5-6, 739 P.2d 1318, 1322-23 (App. 1986) (dismissing the plaintiff's tortious interference claims because protected speech cannot be "wrongful" as a matter of law); *Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 342, 783 P.2d 781, 788 (1989) ("As in defamation, a public official in a false light action must always show that the defendant published with knowledge of the false innuendo or with reckless disregard of the truth."). Furthermore, Yang's claim of aiding and abetting Yang in connection with the November 28 Reply was properly dismissed because, although Yang presented evidence that the ACN Defendants had spoken with the Ungs, he presented no evidence that ACN substantially helped or encouraged the Ungs to defame him. Absent evidence of this element of aiding and abetting, the claim was properly dismissed on summary judgment. *See Wells Fargo Bank*, 201 Ariz. at 485, ¶ 34, 38 P.3d at 23 (elements of aiding and abetting.)

## CONCLUSION

**¶26**　　　The superior court's orders granting the ACN Defendants' motion to dismiss and motion for summary judgment are affirmed.



Ruth A. Willingham · Clerk of the Court
FILED : jt